## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 26 2016, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT P.T.

Richard F. Comingore
Rensselaer, Indiana

ATTORNEY FOR APPELLANT R.W.

Russell Dean Bailey
Demotte, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

J.W. (Minor Child)

    and

P.T. (Mother) & R.W. (Father),

*Appellants-Repondents,*

        v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

February 26, 2016

Court of Appeals Case No. 37A03-1510-JT-1714

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No. 37C01-1504-JT-122

**Baker, Judge.**

[1] P.T. and R.W. appeal the judgment of the trial court terminating their parental rights as to their child, J.W., arguing that the judgment is not supported by sufficient evidence. Finding the trial court's judgment supported by sufficient evidence, we affirm.

## Facts

[2] P.T. (Mother) and R.W. (Father) (collectively, Parents) are the parents of J.W. (Child), who was born on July 19, 2014. On August 1, 2014, Child's aunt and grandmother found Child at Parents' house; Mother was at the house, but incoherent and unable to stay awake. The aunt and grandmother believed that Mother was on drugs. Father was at work. The aunt and grandmother took Child to the police station, and the police contacted the Indiana Department of Child Services (DCS). Mother later awoke from her stupor, and called the police, believing that Child had been kidnapped. The police went to Mother's house, where they found her intoxicated and slurring words. When DCS arrived, they found multiple prescription bottles that, though filled out only four days prior, were either half or fully empty.

[3] Citing Mother's inability to care for Child and Father's negligence in leaving Child in Mother's care, DCS filed a Child in Need of Services (CHINS) petition on August 5, 2014. After a September 15, 2014, factfinding hearing, the Parents stipulated to the allegations in the CHINS petition, namely, that Mother had abused prescription drugs and that Father "cannot care for [Child]

at this time due to work, no stable housing, and lack of skills to parent an infant." Mother's App. 14-15. The trial court granted the petition and ordered Parents to, among other things, complete a substance abuse evaluation, participate in relapse prevention education, submit to random drug screens, complete a parenting assessment, contact DCS once a week, and secure stable housing for their family.

[4] On January 26, 2015, the trial court held a review hearing. It found that Parents had not complied with several portions of its case plan. On April 27, 2015, the trial court found Parents in contempt of its orders, citing forty-six missed drug screens; positive drug tests for marijuana, hydrocodone, methamphetamine, and amphetamine; only ten negative drug tests over the course of eight months; and Parents' lack of participation with DCS services.

[5] On April 29, 2015, DCS filed a petition to terminate Parents' parental rights. The trial court held an evidentiary hearing on September 1, 2015, and issued a termination order on September 29, 2015. The trial court found that there was a reasonable probability that the conditions that resulted in the child's removal would not be remedied, pointing out that Mother and Father had not been able to remain drug-free and had participated in DCS services inconsistently. The trial court further found that termination was in Child's best interest, and that DCS had a satisfactory plan for Child, namely, adoption. Mother and Father now appeal separately.

# Discussion and Decision

[6] The Fourteenth Amendment to the United States Constitution protects a parent's right to establish a home and raise his or her children. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009). Our Supreme Court has observed that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, this right is not absolute and the interests of parents must be subordinated to those of their children when parents are unable or unwilling to meet the responsibilities that accompany this right. *Id.* at 1259–60.

[7] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1260. We consider only the evidence and reasonable inferences drawn therefrom that are most favorable to the judgment. *Id.* When the trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* We determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* We will reverse the trial court's judgment only if it is clearly erroneous, meaning that the trial court's findings do not support its conclusions or its conclusions do not support its judgment. *Id.*

[8] We will analyze Mother's arguments and Father's arguments separately.

# I. Mother's Argument

Mother spends most of her brief providing a reinterpretation of the factual record. She argues that when Child's aunt and grandmother came by her house on August 1, 2014, Mother was not on drugs, but rather she was "so tired that she did not stay awake long enough to answer an unspecified number of questions." Appellant Mother's Br. 7. When Mother drifted out of consciousness and the aunt and grandmother took Child to the police, "[t]heir action could be construed as a kidnapping." *Id*. "There was no need for a hurried or rushed decision. Yet, the decision was made very quickly." *Id.* And so on.

Mother's argument is misplaced—she has conflated the initial CHINS proceeding with the subsequent termination of parental rights. In fact, Mother's brief hardly refers to any fact taking place after this August 2014 incident. But Mother earlier concedes, correctly, that both Parents "freely and voluntarily admitt[ed] to the allegations of the CHINS petition. . . ." *Id.* at 3. Even if we were to substitute Mother's reinterpretation of the facts for the trial court's—something we cannot and will not do, given our standard of review— these contentions do nothing to challenge the final judgment from which she is appealing, which is the termination order. If Mother believed that the CHINS determination was in error, she should have appealed it; she cannot relitigate the issue at this late stage. Since she has provided no other reason to reverse the termination order, Mother's argument fails.

## II. Father's Argument

Father argues that there was not clear and convincing evidence from which the trial court could conclude (1) that there was a reasonable probability that the conditions that resulted in the child's removal from Parents would not be remedied; (2) that there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child; or (3) that termination was in the best interests of Child. Ind. Code § 31-35-2-4(b)(2). In support of his argument, Father directs our attention to several drug screen results that were admitted into evidence over his hearsay objection. He contends that the trial court erred in admitting these results and that without these results, the trial court lacked a factual basis to make the conclusions that it made.

Assuming for the sake of argument that these drug screens were hearsay,[1] we still find Father's argument unavailing, as any error would be harmless. An error will be found harmless if its probable impact, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *In re C.G.*, 933 N.E.2d 494, 508 (Ind. Ct. App. 2010.

---

[1] DCS wanted to put into evidence several drug screens that Father failed. But rather than have the technician who performed the screens testify at trial, DCS simply brought a DCS employee to testify to the results. Father has a strong argument that this is not a permissible method of authenticating drug screens as business records, and that these drugs screens were likely hearsay. We caution DCS and the trial court to pay closer heed to the Indiana Rules of Evidence in the future.

[13] Without the evidence of the drug screens, the trial court still had sufficient evidence regarding Father's drug use. Father's therapist testified that Father admitted to using drugs as a coping mechanism and that Father did not seem willing to stop. Moreover, the trial court had already found Father in contempt for failing to complete a majority of his drug screens. Given that it was Parents' involvement with drugs that resulted in Child's initial removal from the home, the trial court was correct to be troubled by Father's continued involvement with illegal drugs.

[14] Furthermore, while Father did attend some parenting assessments offered by DCS, he did not complete the service. He also failed to contact DCS weekly, as required by the trial court's order. Father also failed to regularly attend the visitations offered by DCS.

[15] When seeking an involuntary termination of parental rights, the State is required to prove, among other elements, the following:

> (B) there is a reasonable probability that:
>
>> (i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or
>>
>> (ii) the continuation of the parent-child relationship poses a threat to the well-being of the child; [and]
>
> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

I.C. § 31-35-2-4(b). Given Father's continued involvement with illegal drugs, along with DCS's plan to have Child's aunt adopt Child, the trial court had ample evidence to support its termination order.

[16] The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.